916 So.2d 1206 (2005)
STATE of Louisiana in the Interest of D.C.P.
No. 05-CA-212.
Court of Appeal of Louisiana, Fifth Circuit.
October 6, 2005.
Eunice S. Charles, Gretna, Louisiana, for Parent/Appellant.
Katherine M. Dowling, Sherry Watters, Bureau of General Counsel, Department of Social Services, New Orleans, Louisiana, for Plaintiff/Appellee.
*1207 Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS and JAMES C. GULOTTA, Pro Tempore.
CLARENCE E. McMANUS, Judge.
C.P., mother of eight-year-old D.C.P., appeals from a judgment terminating her parental rights. For the reasons that follow, we affirm the decision of the juvenile court.
On August 23, 2004, the State of Louisiana, Department of Social Services, Office of Community Services ("OCS") filed a petition for termination of parental rights, seeking to terminate the parental rights of C.P. and the child's natural father, S.L. OCS requested that the father's rights be terminated under LSA-Ch.C. art. 1015(4), and that he was currently incarcerated, serving a ten year sentence, and would not be able to care for the minor for an extended period of time. The petition requested that C.P.'s parental rights be terminated under LSA-Ch.C. art. 1015(4) and (5). In its petition, OCS alleged that the child was placed in the State's custody on April 28, 2003, more than one year prior to the petition. Although a case plan for services was developed, C.P. had made no substantial parental compliance. She failed to provide support for the child for more than six consecutive months, and failed to maintain significant contact with the child for more than six consecutive months. The petition further alleged that C.P. was dependent on drugs and had a pattern of incarceration, and despite intervention, there was no reasonable expectation of significant improvement in the mother's condition or conduct in the near future, and the child needed a permanent and stable home and could not wait any longer for the parent to rehabilitate.
The matter was tried on September 28, 2004. The minor's father testified that he was currently incarcerated, with a release date in 2007. He testified that he was unable to earn any money, and had not paid any child support.
Mrytis Fisher, Social Services Specialist Three for the OCS, was the case manager for the minor child. She testified that there was a case plan developed and approved by the court, in which C.P., the mother, was to undergo a psychological evaluation and enroll in substance abuse program. C.P. was also to pay child support, participate in visitation with the child and to provide a safe and stable home for the child. C.P. did not complete any portion of the case plan, and she visited the child on only one occasion, in January of 2004. There were no letters or any other contact of any kind between the minor and C.P.
C.P. testified that when the child was first placed into the custody of the agency, she was not in contact because she "couldn't face [her] babies." She contacted the agency in October or November, and saw the minor one time after that. She was supposed to start her case plan on June 9th, but was arrested on June 8th, "on the attachments that I had been trying to avoid the whole time I was in here." According to C.P.'s testimony, she spent most of the seventeen months prior to trial in jail, while the minor was in foster care. At the time of trial, C.P. had five months remaining on her prison sentence.
C.P. testified that she gave the agency names of relatives to take the child. She further testified that she did not know she had to pay child support, and that she was unaware that she could send gifts and write letters to the child.
N.I., the child's great aunt testified that she was willing to take the child into her home, and that she had just relocated from Georgia, and had been working with OCS since that time. She was still in Atlanta in April of 2003, and could not take custody at that time. She testified that she was *1208 remodeling the home to accommodate the child. On rebuttal, Ms. Fisher testified that the renovations were in progress because there was a lot of structural damage to the house. She also stated that N.I. was not head of household, as required by OCS. Ms. Fisher further stated that, while the agency was continuing to look into placement with relatives, it would still be in the best interest to terminate parental rights so that the child could be placed with greater permanence.
Another of the child's great aunts, G.I., testified that the family was willing to take the minor child and raise her.
At the conclusion of the hearing the trial court stated that OCS had proven, by clear and convincing evidence, that the parental rights of the parents should be terminated. Thereafter, the trial court rendered judgment terminating the parental rights of both C.P. and S.L. Only C.P. has appealed from that judgment.
In this appeal, she alleges that the trial court erred in terminating parental rights without making the OCS search for available relative placement, and that the trial court erred in terminating parental rights under LSA-Ch.C. art. 1015(4), "where the mother had complied with her case plan while incarcerated and did not intend to abandon her child." Finally, C.P. argues that OCS did not prove that termination of the parental rights was in the best interest of the child.
Termination of parental rights was sought under LSA-Ch.C. art. 1015(4) and (5) which provide:
The grounds for termination of parental rights are:
* * *
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
The State need establish only one ground under LSA-Ch.C. art. 1015 upon which to base the termination of parental rights, and must prove those elements by clear and convincing evidence. State ex rel J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 811; LSA-Ch.C. art. 1035(A). In addition, the trial judge must also find that the termination is in the best interest of the child. State ex rel J.A., 752 So.2d at 811; LSA-Ch.C. art. 1039.
An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to *1209 the manifest error standard. State ex rel K.G., 02-2886 (La.3/18/03), 841 So.2d 759, 762.
C.P. first contends that the trial court erred in terminating her parental rights without making OCS search for available relative placement. The existence of relatives is generally irrelevant to the termination of parental rights. State ex rel C.J.K., 00-2375 (La.11/28/00), 774 So.2d 107, 116.
C.P. next alleges that the trial court erred in terminating parental rights because she did not intend to abandon her child. In this case however, OCS presented evidence to show that C.P. did not provide significant contributions to the child's care and support, nor did she maintain significant contact by visiting or communicating with the child for a period of six consecutive months.
Once the State has established abandonment and failure to provide care and support, the burden shifts to the parent to establish "just cause" and thereby avoid termination. State ex rel J.T.C. and J.A.C., 04-1096 (La.App. 5 Cir. 2/15/05), 895 So.2d 607, on rehearing (La.App. 5 Cir. 3/15/05), writ denied 05-0466 (La.4/8/05), 899 So.2d 11. C.P. contends that she was ready to implement her case plan, but could not do so because of her incarceration.
Incarceration is not a "just cause" defense to failure to support the children or to maintain contact with them in a termination of parental rights case, if the incarceration is shown to be a result of his actions. In the Interest of H.A.N., 528 So.2d 1079, 1080 (La.App. 5th Cir. 1988); In re Fleming, 01-1405, p. 7 (La. App. 5th Cir.4/30/02), 817 So.2d 371, 376. In H.A.N., we stated that "There is no set rule resolving the question of whether incarceration is justification for non-support. Facts and circumstances vary. Each case is decided upon its particular merits." 528 So.2d at 1079-80, (citations omitted).
State ex rel J.T.C. and J.A.C., on rehearing, 895 So.2d at 616.
C.P. argues that the trial court erred in terminating parental rights because she complied with her case plan while incarcerated. However, the evidence reflects that C.P. was arrested on June 8th, one day prior to her appointment to begin her case plan, and she did not implement any portion of that plan. Furthermore, C.P. offered no proof that there is a "reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home."
C.P. argues that OCS did not prove by clear and convincing evidence that termination of parental rights was in the best interest of the child.
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently *1210 found the interest of the child to be paramount over that of the parent.
State ex rel J.A., supra at 810-811.
C.P. states that there was no showing of best interest of the child, however she provided no evidence to rebut OCS's showing that she was unable to care for her child and that termination of parental rights would be in the child's best interest and would allow greater permanence in placement. While C.P. argues in brief that she executed her case plan and began to exhibit a lifestyle demonstrating her intention of reunifying with her daughter, it was shown that she was first arrested, and then sentenced and incarcerated, before she could begin to implement the plan. In State in re C.D., 558 So.2d 806, 808 (La.App. 5 Cir.1990), we said that
We agree with and adopt the reasoning of another panel of this court in State in Interest of M.P., [538 So.2d 1112 (La. App. 5th Cir.1989)], that adults can take years to improve their functioning but that children are not granted the same amount of time, and their lives are significantly disrupted while their parents are attempting to deal with their own problems.
Accordingly, we find no abuse of discretion in the trial court's determination that OCS proved by clear and convincing evidence that termination of parental rights was in the best interests of the child, pursuant to LSA-Ch.C. Art. 1015. LSA-Ch.C. art. 1037. We therefore affirm the decision of the trial court.
AFFIRMED.